**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   1:18-cv-3330 |
| v. | ) | |
| | ) | |
| THE CITY OF JOLIET, ILLINOIS, DPR | ) | |
| EXTENSION, LLC, CENTERPOINT | ) | |
| PROPERTIES TRUST, THE COUNTY OF | ) | |
| WILL, ILLINOIS, and RANDALL | ) | |
| BLANKENHORN, as SECRETARY OF | ) | |
| TRANSPORTATION of the ILLINOIS | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff, BNSF Railway Company, ("BNSF"), by its attorneys, Kevin W. Baldwin and Robert J. Prendergast of Daley Mohan Groble, P.C., and for its First Amended Complaint for Declaratory Judgment and Injunctive Relief against Defendants, The City of Joliet, Illinois ("Joliet"), DPR Extension, LLC ("DPR"), CenterPoint Properties Trust ("CenterPoint"), The County of Will, Illinois ("Will County"), and Randall Blankenhorn, in his official capacity as the Secretary of Transportation of the Illinois Department of Transportation ("IDOT"), states:

**Nature of Action**

1.      The Defendants in this matter, in concert with one another, seek to regulate interstate rail transportation and impose undue burdens on interstate commerce through a series of state and municipal actions directed at BNSF's interstate rail operations located in Will County, Illinois.

2.      Specifically, Joliet and DPR have filed proceedings under Illinois state law seeking

the authority to condemn a portion of BNSF's interstate main line railroad operating right of way, which, if permitted to proceed, would unreasonably interfere with BNSF's rail operations and deprive BNSF of rail corridor rights in direct violation of Federal law.

3. In addition, and no less serious, Joliet, Will County, IDOT, and CenterPoint have entered into a Memorandum of Understanding ("MOU") whereby the governmental entities (Joliet, Will County, and IDOT) have agreed to grant to CenterPoint the authority to assume jurisdiction over the operation of certain roadways, which together, provide the sole means of ingress and egress for ground transportation in and out of BNSF's Logistics Park Chicago rail yard ("Logistics Park Chicago"), which is a significant hub of interstate railroad commerce. This purported authority includes the right to regulate the flow of traffic and impose tolls and other restrictions upon vehicles transporting goods and services in and out of BNSF's interstate rail terminal, in violation of a multitude of Federal laws and regulations.

4. BNSF seeks declaratory and injunctive relief in connection with the Defendants' efforts to interfere with and regulate BNSF's interstate rail operations. BNSF seeks a declaration that the Defendants' authority for the condemnation proceeding taken under the Illinois Eminent Domain Act is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, et seq., to the extent that Joliet and DPR seek to use such authority to take land owned by BNSF utilized for the operation of its interstate railroad. In addition, BNSF seeks a declaration that the rights granted to CenterPoint under the MOU and any related or resulting agreements are preempted by Section 10501 of ICCTA, 49 U.S.C. § 10501 (exclusive regulation of transportation by rail carriers); Section 31114 of the Surface Transportation Assistance Act, 49 U.S.C. § 31114 ("STAA"); and Section 14501(c) of the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c) ("FAAAA") to the extent that the authority granted will

regulate or otherwise impact interstate rail transportation and the vehicular access thereto. BNSF further seeks declarations that the government's delegation of regulatory authority to a self-interested private entity violates due process as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment; and that the Defendants' actions under state law impose an impermissible burden on interstate commerce in further violation of Article I, Section 8, clause 3 of the United States Constitution (the "Commerce Clause"). As a remedy to the foregoing, BNSF seeks equitable and injunctive relief to maintain the status quo and avoid the imminent and irreparable harm threatened by the Defendants' actions, for which there is no adequate remedy at law.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1337, as this action arises under an Act of Congress regulating commerce, specifically rail and commercial transportation under ICCTA, the STAA, and the FAAAA. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which grants district courts supplemental jurisdiction over all claims that are "closely related" to claims over which they have original jurisdiction.

6.    Plaintiff, BNSF Railway Company, is a corporation organized under the laws of the State of Delaware, and has its principal place of business in Fort Worth, Texas. Plaintiff is a common carrier by rail engaged in interstate commerce.

7.    Defendant The City of Joliet, Illinois is a municipal home rule corporation organized pursuant to the Illinois Municipal Code, 65 ILCS 5/1-1-1 et seq.

8. Defendant DPR Extension, LLC is a Delaware limited liability company authorized to conduct business in the State of Illinois. Its principal place of business is located in Oak Brook, Illinois, and it is managed by Defendant CenterPoint Properties Trust.

9. Defendant CenterPoint Properties Trust is organized as a real estate investment trust, and defined as a corporation under the laws of the State of Maryland. Its principal place of business is located in Oak Brook, Illinois.

10. Defendant The County of Will, Illinois is a subdivision of the State of Illinois, organized pursuant to the Illinois Counties Code, 55 ILCS 5/1-1001 et seq.

11. Defendant Randall Blankenhorn is the Secretary of Transportation of the Illinois Department of Transportation, an administrative agency of the State of Illinois.

12. Venue is proper in the Northern District of Illinois, Eastern Division, in accordance with 28 U.S.C. § 1391 in that the several Defendants are residents of this Division, a substantial part of the events or omissions giving rise to the claims occurred in this Division, and the real property that is the subject of the action is situated within the Division.

## **Factual Background**

13. BNSF Railway Company operates a transcontinental rail transportation network consisting of over 32,500 miles of track in 28 states. BNSF's network provides expansive rail connections for customers linking the North American western seaboard from Los Angeles, Oakland, Seattle, and Vancouver with destinations as far east as Winnipeg, Minneapolis, and Chicago, and south to Atlanta, New Orleans, and Houston, including connections to ports and other rail carriers extending its reach throughout the continent.

14. BNSF is classified as a Class I rail carrier by the United States Surface Transportation Board ("STB"), 49 C.F.R. 1201, Subpart A, §1–1.

- 4 -

15.     Chicago is the hub of the North American rail network (often referred to as the "Greater Chicago Terminal"). Six of the seven Class I rail carriers, including BNSF, meet at Chicago and interchange approximately 25% of all U.S. rail volume, seven days a week.

16.     BNSF reaches the Greater Chicago Terminal via two main routes, one approaching from the west, through Aurora and known as the Chicago Subdivision, and the other from the south, through Joliet and known as the Chillicothe Subdivision.

17.     This matter in pertinent part involves Joliet's and DPR's request to condemn a portion of BNSF's right of way along the Chillicothe Subdivision, over which BNSF operates a double-main line railroad track with approximately seventy (70) trains per day, at a maximum authorized speed of 79 miles per hour. In addition to freight traffic, the Chillicothe Subdivision serves as an alternate route for Amtrak passenger service.

18.     BNSF's Logistics Park Chicago rail facility in Elwood, Will County, Illinois is a rail terminal facility that serves as Chicago's premier regional hub for both intermodal shipping container traffic and as a port of destination for the shipment of new automobiles. Following the completion of a recent expansion project last year, Logistics Park Chicago is now considered the largest inland port in the nation, with the capacity to process 1.5 million intermodal shipping containers annually, the largest not only in Chicago but throughout the United States. In addition, Logistics Park Chicago serves as the gateway for the shipment of nearly 400,000 new automobiles per year. (See Overview of Logistics Park Chicago, attached hereto as Exhibit "A" and incorporated herein.)

19.     Logistics Park Chicago spans approximately 638 acres on the former grounds of the Joliet Arsenal, which was decommissioned by Congress and transferred to the United States Forest Service in 1995. It is essentially landlocked and surrounded on the western, southern, and

southeastern sides by the Midwest National Tallgrass Prairie and the Abraham Lincoln National Cemetery. Commercial vehicle access to the facility is restricted to a single access point on the north side of the terminal, on a roadway known as Elwood International Port Road (formerly Baseline Road). Elwood International Port Road provides direct access to nearby Interstate I-55 of the National Highway System via Arsenal Road, a state roadway including a newly- constructed, high-capacity interchange at I-55 which was built by IDOT specifically to facilitate the construction and operation of BNSF's rail terminal facility. (See Access Road Overview, attached hereto as Exhibit "B" and incorporated herein.)

20.     Logistics Park Chicago serves customers through 24-hour, 365-day operations. The formerly vacant lands surrounding the rail terminal now house over 17 million square feet of retail space across 1,200 acres, serving BNSF's customers including Amazon, Cargill, Home Depot, Georgia-Pacific, IKEA, Samsung, Walmart, and others.

21.     BNSF's Logistics Park Chicago directly employs hundreds of rail workers and also provides work for thousands of people employed as vendors, contractors, ground transportation providers, and in the customer facilities it serves. Moreover, Logistics Park Chicago provides customers with access to a global transportation network and is able to achieve efficiencies that permit BNSF and its customers to control costs and provide substantial economic benefits both locally and as part of the national transportation network.

22.     In 2000, as a direct incentive to BNSF to foster the substantial investment and development of Logistics Park Chicago, IDOT and Will County entered into an agreement to fund over $45,000,000 in improvements to include Elwood International Port Road and Arsenal Road, in order to provide the necessary traffic capacity to connect Logistics Park Chicago with Interstate I-55.

23.     Today, approximately 8,200 vehicles per day now use these routes to access Logistics Park Chicago. In combination with traffic to nearby customer sites surrounding Logistics Park, approximately 12,900 vehicles per day use Arsenal Road to access Interstate I-55.

24.     CenterPoint has since focused its development efforts on the expansion of its CenterPoint Intermodal Center in the areas to the north of Logistics Park Chicago, surrounding Union Pacific Railroad's Joliet Intermodal Terminal, which opened in 2010.

25.     As part of CenterPoint's northerly development plans, and as detailed in the MOU, CenterPoint has reached an agreement with IDOT, Will County, and Joliet to extend Houbolt Road in Joliet south over the Des Plaines River, to provide the developments surrounding the Joliet Intermodal Terminal with a direct connection to Interstate I-80 ("Houbolt Road Project" or "Project").

26.     As part of the agreement for the extension of Houbolt Road, CenterPoint has agreed to fund a substantial portion of the cost of construction of the bridge over the Des Plaines River, in exchange for fee simple ownership of the roadway and the authority to collect tolls thereon. (See MOU Agreement, attached hereto as Exhibit "C" and incorporated herein.)

27.     As part of the considerations provided by IDOT, Will County, and Joliet, the MOU grants to CenterPoint the authority to assume "jurisdiction" over other area roads surrounding the project area, which it has defined in the MOU via a map, and expressly includes each and every one of the commercial traffic routes serving BNSF's Logistics Park Chicago, including Arsenal Road connecting Logistics Park Chicago to I-55, Manhattan Road which connects primarily non-commercial traffic due to existing restrictions to Illinois Route 53, and other roadways departing northerly from Elwood International Port Road, even though these routes do not serve CenterPoint's current development interests in the area surrounding Union Pacific's Joliet Intermodal Terminal. (See Ex. C, Art. XII, pp. 9-10, and

Ex. A thereto.)

28.     The rights granted by IDOT, Will County, and Joliet under the MOU include the authority for CenterPoint to "impose trucking restrictions, weight limits, or other similar regulations on the road(s)" and especially, to "impose tolls or charges on vehicles for the privileges of using such roads" in order to ensure that the toll bridge being funded by CenterPoint on Houbolt Road "remains a fiscally sustainable long-term traffic solution" ensuring their own, private, profitability at the expense of BNSF.

29.     Upon information and belief, DPR is a single-purpose entity wholly owned and controlled by CenterPoint or its subsidiaries or affiliates, which was created for the purpose of holding title to the Houbolt Road Bridge once complete.

30.     On February 28, 2018, the City of Joliet, jointly with DPR Extension, LLC, filed a petition before the Illinois Commerce Commission ("ICC"), requesting that the ICC enter an Administrative Order granting it authority to establish a public railroad crossing over BNSF's right of way adjacent to the Des Plaines River, at the location of the planned Houbolt Road Bridge. (See Crossing Petition, attached hereto as Exhibit "D" and incorporated herein.)

31.     Subsequently, on March 2, 2018, the City of Joliet and DPR again jointly filed a second petition before the Illinois Commerce Commission requesting that the ICC enter an Administrative Order granting it authority to seek condemnation of a permanent easement over BNSF's right of way for the planned Houbolt Road Bridge.

32.     Therein, Joliet and DPR revealed plans to permanently take a portion of BNSF's rail operating property for DPR's own private use, ownership, and control. (See Condemnation Petition, attached hereto as Exhibit "E" and incorporated herein.)

33.     As part of these plans, DPR intends to place multiple bridge piers within

BNSF's operating right of way. The design, location, and placement of the proposed bridge piers, in, on, and along BNSF's railroad right of way will unreasonably interfere with BNSF's existing interstate rail operations and prevent BNSF from using the subject acreage for rail transportation in the future.

34. DPR intends, through its request for an overbroad, unrestricted, permanent ground easement, to take BNSF's property not simply for the bridge and related piers, but also for its own, for-profit, private purposes, wholly unrelated to the construction or operation of the bridge itself, including:

> "the right to permit others to use or operate, install, maintain, alter, repair, replace, renew, improve and remove other facilities and structures, including, but not limited to, storm piping and associated structures, underground communication lines, fiber optics, wire, or other means of electricity, voice data, video, digitized information, pipes and conduits, upon and beneath the surface…."

(Condemnation Petition, Ex. E, ¶ 8, at pp. 2-3.)

35. The construction and permanent location of a bridge structure upon and over BNSF's rail operations property, in addition to the temporary and permanent requirements for access upon and across BNSF's transcontinental railroad right of way during the multi-year construction period and future maintenance thereafter will unreasonably interfere with BNSF's interstate rail transportation operations.

36. The taking now sought by Joliet and DPR seeks to convert BNSF's privately-held railroad operating property into a private toll bridge and right of access for an unknown number of other parties, which will be both owned and operated by a private, for-profit, non-governmental entity, removing that acreage from BNSF's ownership and use and inhibiting BNSF's ability to use the land for railroad transportation purposes.

37. The condemnation sought by Joliet and DPR, if permitted to proceed, would

permanently and irrevocably deprive BNSF of valuable railroad operating property utilized in interstate commerce, unreasonably interfering with both its current rail operations as well as its ability to expand and satisfy its obligations as a common carrier to serve current and future rail customers utilizing its existing right-of-way.

38.     The economic decision by CenterPoint and DPR to seek to acquire BNSF's property, in lieu of adjoining parcels for the placement of piers outside of BNSF's right of way, fails to consider the inherent costs associated with or impacts on BNSF's interstate rail operations and its ability to adapt and expand in response to the changing needs of rail transportation.

39.     In addition, the grant of authority which purports to permit CenterPoint the authority to assume jurisdiction over 100% of the commercial traffic entering and leaving BNSF's Logistics Park Chicago will have a substantial and deleterious effect on interstate rail transportation at Logistics Park Chicago.

40.     For example, the grant of the right of regulation of the size, type, and volume of traffic which may access Logistics Park Chicago as granted in the MOU would grant CenterPoint, a private party outside of the authority of the United States Surface Transportation Board, the ability to directly regulate the access of commercial traffic in and out of Logistics Park Chicago. The burdens imposed under such regulations will increase the cost of rail transportation to the shippers and customers served by BNSF, seriously impacting the cost and flow of goods and services in interstate commerce.

41.     The further grant of authority in the MOU which purports to permit CenterPoint, a private for profit company, to establish and collect tolls or charges on the public roadways which provide the sole routes of access to Logistics Park Chicago would represent a directly-assessed burden upon and increase in the cost of transportation by rail, effectuated

by a third-party private entity for its own private profits, with no limits on the extent of the regulations or tolls CenterPoint could impose.

42.     The Secretary of Transportation for IDOT, Randall Blankenhorn, personally signed the MOU on behalf of IDOT.  (Exhibit C to the First Amended Complaint, p. 16)

43.     As set forth in the Crossing Petition for the Houbolt Road Bridge filed before the Illinois Commerce Commission, the MOU sets forth the rights and responsibilities the parties have with respect to the Bridge Project. (Ex. D to First Amended Complaint, ¶ 7)

44.     By the terms of the MOU, and agreement of the Defendants, all plans and design specifications for the Houbolt Road Toll Bridge were and/or have to be approved by IDOT. [Exhibit C to the First Amended Complaint, § V(C)]

45.     By the terms of the MOU, and agreement of the Defendants, no changes in the bridge plans or design specifications for the Houbolt Road Toll Bridge can be made without IDOT's approval. [Exhibit C to the First Amended Complaint, § V(C)]

46.     By the terms of the MOU, and agreement of the Defendants, IDOT has required that the Houbolt Road Toll Bridge be built in accordance with IDOT's Standard Specifications for Road and Bridge Construction. [Exhibit C to the First Amended Complaint, § V(C) and VII(B)]

47.     Further, IDOT has agreed under the MOU to finance improvements to the Interstate 80 and Houbolt Road interchange and other improvements amounting to $21 million dollars to facilitate connection of the Houbolt Road Toll Bridge traffic to Interstate 80.  [Exhibit C to the First Amended Complaint, § I and VIII]

48.     Under the terms of the MOU, the Secretary of IDOT, along with Joliet and Will County, have agreed not to disclose any of the financial information provided by CenterPoint on public infrastructure project and infrastructure improvements (aka the "Purpose").    This

Non-Disclosure Agreement included protection of information provided to IDOT by CenterPoint on "studies, costs, projections, traffic data, financial information, construction information, among other documents." (See Section XIV of the MOU, and the Non-Disclosure Agreement attached to MOU, Ex. C to the First Amended Complaint).

49. Under the MOU, IDOT has agreed to participate in the grant of authority to CenterPoint/DPR to toll, restrict, retrain, regulate and/or limit access to BNSF's intermodal facility at Logistics Park in Elwood, Illinois. [Exhibit C to the First Amended Complaint, § XII (B)(ii) and XII(C)]

50. IDOT, through its Secretary, Randall Blankenhorn, has a substantial connection to the Petitions filed before the Illinois Commerce Commission, and is an affirmative actor in these proceedings, and the understandings and plans of the Defendants alleged herein, including those set forth in the MOU, which are all subject of BNSF's claims regarding the condemnation proceedings and regulating access to BNSF's Logistics Park rail terminal and facility.

51. Will County similarly has a substantial connection to, and significant participation in, the Petition before the Illinois Commerce Commission seeking the right to condemn BNSF's right of way for the Houbolt Road Toll Bridge.

52. Not only is Will County a supporting party to both proceedings before the Commission seeking to condemn and for permission to build the bridge (see Ex. D and E attached to the First Amended Complaint), Will County provided the alleged authorization and "transfer of power" to the City of Joliet to seek to condemn the BNSF's right of way, which is property in unincorporated Will County. (See Ex. E to the First Amended Complaint, par. 4, and Exhibit A attached thereto).

53. As part of its "transfer of power for eminent domain", Will County has allegedly transferred the power to, inter alia, obtain ground rights for the Houbolt Road Toll Bridge for

taking of BNSF's operating right-of-way, and to alleged underground rights for utility and drainage easements, and "other property interests necessary for reconstructing and improving Vetter Road." (See section 2 of the Intergovernmental agreement, Exhibit A to the Petition for Eminent Domain Approval – Exhibit E to the Complaint).

54.     The property owned by BNSF and used for its railroad right of way in the area sought by Defendants is comprised of rough terrain on a substantial grade, presenting additional challenges and considerations in the use of the same.

55.     In addition to the substantial connection to the alleged right to condemn BNSF's right of way upon which BNSF currently, and based upon needs in the future, conducts interstate rail operations, Will County, along with the City of Joliet and other Defendants, have made promises, agreements, and/or understandings to restrict, limit, toll and otherwise regulate key access roads BNSF's Logistics Park rail facility, including a grant of authority to CenterPoint to assume jurisdiction and control restrictions of these roadways. (See Section XII of the MOU, Exhibit C to the First Amended Complaint)

56.     The rights and authority granted by Defendants to CenterPoint, a self-interested private entity, to regulate BNSF's competing interests, will substantially affect rail transportation and interstate commerce generally. It will increase the cost of rail transportation through Logistics Park Chicago.

57.     The anticipated economic impact from the tolls or other traffic restrictions on the 12,900 vehicles per day passing over Arsenal Road, and specifically, the 8,200 vehicles per day accessing Logistics Park Chicago, will have a profound impact on the interstate transportation conducted through the facility.

58.     The construction of the Houbolt Road Bridge and underlying authority granted to CenterPoint and DPR through the MOU serve a limited purpose, almost exclusively

- 13 -

benefitting CenterPoint and its private development interests at the expense of competing economic centers that will not utilize the planned bridge. The inclusion of BNSF's rail terminal and its access roads serve no public purpose, existing only to permit CenterPoint and DPR to recover the cost of this largely private benefit by granting them the authority to impose tolls and other traffic restrictions on the commercial traffic destined for BNSF Logistics Park Chicago, constitutes a violation of BNSF's due process rights.

59.     BNSF has urged the Defendants to abandon their plans to impose this direct and unauthorized regulation upon traffic to Logistics Park Chicago, through a reasonable and commonsense revision to the map of the affected roadways. However, the Defendants have rejected BNSF's compromised proposals, thus evidencing their intention to seek to directly regulate traffic for Logistics Park Chicago instead. (See Proposed Revised Study Area, attached hereto as Exhibit "F" and incorporated herein.)

60.     If Joliet and DPR are permitted to proceed with the actions now pending before the Illinois Commerce Commission as pled, BNSF will be prejudiced by any finding made by the ICC, which pursuant to Illinois state law, creates a presumption in their favor supporting their alleged authority to condemn BNSF's property under state law.

61.     The proceedings filed by Joliet and DPR seek to take and permanently encumber land owned and used by BNSF for rail transportation, and would further impede and prevent BNSF from reconfiguring its operations to handle changes in the type and volume of rail traffic along its transcontinental right of way in the future. In addition, the authority granted to CenterPoint to regulate commercial traffic, permitting a private entity to act as gatekeeper and ratemaker over the sole routes in and out of BNSF's Logistics Park Chicago, will have a profound effect on interstate rail transportation. Declaratory and injunctive relief

- 14 -

against the Defendants is warranted and will halt the irreparable harm that is certain to result if not enjoined.

62.     Upon information and belief, CenterPoint has been allocated and issued hundreds of millions of Private Activity Bonds through the Build America Bureau of the United States Department of Transportation in the Joliet Area, including in the "Study Area" and for the Houbolt Road Toll Bridge.

63.     As part of the application, allocation and/or issuance of these Private Activity Bonds, CenterPoint, as borrower and issuer of the bonds, and as an entity responsible for re-payment of the bonds, has put forth an accounting of the financial structure for the projects, including the Houbolt Road Toll bridge.

64.     Upon information and belief, Defendants have made traffic studies and shared the financial calculations and determinations on financing of the Houbolt Road Bridge, including the necessity of tolling Arsenal Road and/or Baseline Road, and imposing other roadway restrictions in the area subject of the MOU make sure tolling will generate sufficient revenues to pay for the Toll bridge.

65.     Despite requests from BNSF for the financial information involved in building an expensive bridge allegedly for the "benefit of the public", Defendants have refused to provide any financial information on these matters, with IDOT, City and Will County withholding such information based upon the terms of a Non-Disclosure Agreement with CenterPoint so that its public dealings on alleged public infra-structure projects are kept from public review, while CenterPoint obtains control the public roadways, roadway tolls and restrictions, and the development of the facilities and land in Will County adjacent to the Interstates 55 and 80 exchange.

66.     Upon information and belief, Defendants have agreed to participate in a

- 15 -

revenue share created by the tolling powers given to CenterPoint. (Exhibit C to First Amended Complaint, § IX (E).

67.     Upon information and belief, Defendants have a comprehensive elaborate plan and/or understanding, agreement or terms of the public private partnership, arrangement, and/or joint venture to permit CenterPoint control of tolling and restricting roadways in the "study area", including, upon information and belief, the direct access roads to BNSF's Logistics Park rail facility in exchange for constructing and financing the Houbolt Road bridge.

68.     The proceedings filed by Joliet and DPR, with the substantial connection and involvement of the Secretary of IDOT and Will County, are part of the comprehensive plan between Defendants which have involved numerous understandings, agreements, letter agreements, communications, resolutions, and terms of the public private partnership, arrangement and/or joint venture to construct the Houbolt Road Toll Bridge and permit CenterPoint to develop and control the roads and development of the area subject of the MOU.

## **COUNT I**
### **(Declaratory Judgment – Condemnation – ICCTA Preemption)**

1-68.   BNSF re-alleges paragraphs One through Sixty-Eight aforesaid as and for Paragraphs One through Sixty-Eight of Count I as through fully set forth herein.

69.     ICCTA, enacted in 1995, vests the Surface Transportation Board with exclusive jurisdiction over transportation by rail carriers and operation of their facilities, and preempts other remedies provided under Federal or state law:

> "The jurisdiction of the Board over (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment,

or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).

70. BNSF is a "rail carrier," as defined by ICCTA, engaged in interstate rail transportation. 49 U.S.C. § 10102.

71. BNSF's freight and intermodal rail transportation operations along its transcontinental right of way including the terminal operations at Logistics Park Chicago fall within the exclusive jurisdiction of the STB, under ICCTA. 49 U.S.C. § 10102.

72. Condemnation of railroad operating property constitutes state regulation of rail transportation, and is preempted under ICCTA.

73. The proceedings before the Illinois Commerce Commission filed by Joliet and DPR, in conjunction with IDOT and Will County, seeking authority to take BNSF's property will unreasonably interfere with BNSF's interstate rail operations and have a substantial and adverse effect thereon, including but not limited to, direct interference with rail operations caused by the placement of a bridge and its piers over and upon BNSF's right of way, unreasonable interference caused by such other private facilities and easements on, under, upon, and over the right of way, the loss of BNSF's future possessory right to its right of way over the land sought by the Defendants, the increased cost of managing rail operations through a reduced right of way and capacity, the inability to provide for future capacity or to reconfigure rail facilities within BNSF's right of way, the loss of a contiguous parcel of land over which to operate and expand the right of way, and the impediments preventing future land acquisition for future rail expansion in the area.

74. Each of these adverse effects unreasonably interferes with the safe, efficient,

and economic operation of BNSF's interstate freight rail transportation operations across its transcontinental rail network.

75.     The filing of proceedings before the Illinois Commerce Commission seeking condemnation have created an actual and justiciable controversy between BNSF and the Defendants concerning whether the condemnation authority granted to CenterPoint and DPR under state law is preempted by ICCTA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

76.     The relief sought in the proceedings before the Illinois Commerce Commission will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

77.     BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

A.     For the entry of a Judgment declaring that the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 et seq., preempts the Defendants' state law authority under the Illinois Eminent Domain Act to condemn BNSF's property and place piers and other encumbrances within BNSF's railroad right of way;

B.     For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining the proceedings now pending before the Illinois Commerce Commission and further enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from seeking to condemn BNSF's right

of way as provided herein;

C.    Awarding BNSF Railway Company its costs in bringing this action; and,

D.    For such other and further relief as is right and just.

## COUNT II
### (Declaratory Judgment – Terminal Access – ICCTA Preemption)

1.-77.  BNSF re-alleges paragraphs One through Seventy-Seven aforesaid as and for Paragraphs One through Seventy-Seven of Count II as through fully set forth herein.

78.    Rail "transportation" under ICCTA subject to the exclusive authority of the STB is defined as:

> "(a) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

> (b) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property."

49 U.S.C. § 10102.

79.    The authority granted by Joliet, Will County, and IDOT to CenterPoint to enact traffic restrictions and impose tolls and other charges upon the commercial vehicular access to a rail terminal facility such as BNSF Logistics Park Chicago constitutes state regulation of rail transportation, and is preempted under ICCTA.

80.    The ability of CenterPoint to regulate access to BNSF's rail terminal facility will have a substantial and adverse effect on BNSF's interstate rail operations, including but not limited to, an increase in the cost of rail transportation through Logistics Park Chicago and/or decreased shipments.

81.    These adverse effects unreasonably interfere with the safe, efficient, and

economic operation of BNSF's interstate freight rail transportation operations across its transcontinental rail network.

82.     In conjunction with comprehensive plan and/or understanding, agreement or terms of the public private partnership, arrangement, and/or joint venture between the Defendants involved with building of the Houbolt Road Toll Bridge and related funding of the toll bridge, the parties entered into the MOU knowing that such authority granted to a private entity to toll, restrict and assume jurisdiction over the public roadways in conjunction with the build out of the Houbolt Road toll bridge, including those which provide sole access roadways to BNSF's Logistics Park facility, would permit CenterPoint the ability to control development of the area. (See the minutes of the Will County Board of December 8, 2016 prior to final approval of the MOU on December 15, 2016, as set forth in Exhibits G (p. 4-5)

83.     In furtherance of the comprehensive plan, agreements, understanding, partnership, joint venture and/or other arrangement between the Defendants regarding the development and financing of study area and bridge, CenterPoint has been issued and/or allocated over $300 million dollars in Private Activity Bonds from the Build America Bureau of the United States for which CenterPoint was required to provide information on paying back the bondholders.

84.     Defendants are currently executing on their comprehensive plan and agreement to allow CenterPoint, in exchange for obtaining funding and approval for the proposed Houbolt Road Toll Bridge, to regulate access and traffic into BNSF's rail terminal facility, and make determinations on tolling and other restrictions to the roadways which have not already been subject of agreed restrictions, such as Manhattan Road, and the agreement not to permit the building of other roads into the area involved in the MOU.

85.      BNSF has requested an accounting of the financing of the Bridge, and none

has been given to date.

86.     The grant of authority contained in the MOU, providing CenterPoint with the ability to regulate access to BNSF's rail terminal facility has created an actual and justiciable controversy between BNSF and the Defendants concerning whether the authority granted to CenterPoint under state law is preempted by ICCTA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

87.     The grant of authority to CenterPoint by Joliet, Will County, and IDOT will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

88.     BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

E.     For the entry of a Judgment declaring that the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 et seq., preempts the Defendants' state law authority to regulate access to BNSF's rail terminal facility for public or private economic purposes;

F.     For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from imposing any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

G.     Awarding BNSF Railway Company its costs in bringing this action; and,

H.      For such other and further relief as is right and just.

## COUNT III
### (Declaratory Judgment – STAA Preemption)

1.-88.  BNSF re-alleges paragraphs One through Eighty-Eight aforesaid as and for Paragraphs One through Eighty-Eight of Count III as through fully set forth herein.

89.      The STAA contains an express preemption provision barring state and local governments from enacting or enforcing any law that denies commercial motor vehicles "reasonable access" between the interstate highway system and a rail terminal:

> "A State may not enact or enforce a law denying to a commercial motor vehicle…reasonable access between" the Interstate and certain specified destinations. Those specified destinations include "terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers…." 49 U.S.C.
> § 31114(a).

90.      BNSF operates a terminal within the definition of Section 31114.

91.      Joliet, Will County, and IDOT have enacted a law that has authorized CenterPoint to deny reasonable access between BNSF's rail terminal facility and the federal Interstate system and other federally-funded highways.

92.      The restrictions contemplated by the MOU are not reasonable restrictions on commercial vehicle access to BNSF Logistics Park Chicago.

93.      The restrictions contemplated by the MOU are not based on legitimate safety or other public interest considerations, but rather, seek only to generate revenue for a private non- governmental entity.

94.      The ability of CenterPoint to regulate access to BNSF's rail terminal facility frustrates the purposes of the STAA, and will have a substantial and adverse effect on BNSF's interstate rail operations, including but not limited to, an increase in the cost of rail transportation through Logistics Park Chicago.

95.     The grant of authority contained in the MOU, providing CenterPoint with the ability to regulate access between BNSF's rail terminal facility and the federal Interstate highway system has created an actual and justiciable controversy between BNSF and the Defendants concerning whether the authority granted to CenterPoint under state law is preempted by STAA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

96.     The grant of authority to CenterPoint by Joliet, Will County, and IDOT will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

97.     BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

I.      For the entry of a Judgment declaring that the Surface Transportation Assistance Act, 49 U.S.C. § 31114 et seq., preempts the Defendants' state law authority to regulate access to BNSF's rail terminal facility for public or private economic purposes;

J.      For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from imposing any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

K.      Awarding BNSF Railway Company its costs in bringing this action; and,

L.      For such other and further relief as is right and just.

## COUNT IV
### (Declaratory Judgment – FAAAA Preemption)

1.-97. BNSF re-alleges paragraphs One through Ninety-Seven aforesaid as and for Paragraphs One through Ninety-Seven of Count IV as through fully set forth herein.

98. The FAAAA has a broad preemptive purpose, and bars state and local governments from enacting or enforcing any law or regulation "related to a price, route, or service of any motor carrier [of property] …with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

99. Joliet, Will County, and IDOT have enacted a law that has authorized CenterPoint to enact commercial vehicle restrictions and levy tolls and other charges along the only authorized route in or out of BNSF's Logistics Park Chicago.

100. The authority granted to CenterPoint adversely affects the pricing and route of motor carriers transporting property in and out of BNSF Logistics Park Chicago.

101. The authority granted to CenterPoint is not based on legitimate safety or other public interest considerations, but rather, serves only to generate revenue for a private non-governmental entity.

102. The authority granted to CenterPoint by Joliet, Will County, and IDOT to regulate the access to and cost of the route into BNSF's rail terminal facility is barred the FAAAA, and will have a substantial and adverse effect on BNSF's interstate rail operations, including but not limited to, an increase in the cost of rail transportation through Logistics Park Chicago.

103. The grant of authority contained in the MOU, affecting the pricing and route of access into BNSF's rail terminal facility has created an actual and justiciable controversy between BNSF and the Defendants concerning whether the authority granted to CenterPoint

under state law is preempted by FAAAA. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

104.     The grant of authority to CenterPoint by Joliet, Will County, and IDOT will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

105.     BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

M.     For the entry of a Judgment declaring that the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c), preempts the Defendants' state law authority to regulate access to BNSF's rail terminal facility for public or private economic purposes;

N.     For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from imposing any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

O.     Awarding BNSF Railway Company its costs in bringing this action; and,

P.     For such other and further relief as is right and just.

**COUNT V**
**(Declaratory Judgment – Violation of Due
Process)**

1.-105. BNSF re-alleges paragraphs One through One-Hundred Five aforesaid as and for Paragraphs One through One-Hundred Five of Count V as through fully set forth herein.

106.     CenterPoint and its affiliates, including its commonly-managed subsidiary, DPR, are privately-held, for-profit entities engaged in the development of real estate. CenterPoint touts that it "acquires, develops, redevelops, manages, leases and sells state-of-the-art warehouse, distribution, and manufacturing facilities near major transportation nodes."

107.     While CenterPoint previously worked to develop portions of BNSF Logistics Park Chicago, and continues to own and act as landlord for certain customers adjacent to BNSF's terminal, CenterPoint's current interests are focused on the development of warehouse facilities surrounding Union Pacific's Joliet Intermodal Terminal, located approximately seven (7) miles to the north of Logistics Park Chicago, in neighboring Joliet, Illinois.

108.     CenterPoint is currently marketing the development of over 1,500 acres of land it owns adjacent to the Joliet Intermodal Terminal, and has offered to fund the majority of the cost of the proposed Houbolt Road Bridge in order to accommodate the increased traffic volumes needed to construct such a large development.

109.     The construction of the Houbolt Road Bridge will almost exclusively serve CenterPoint's future customers surrounding the Joliet Intermodal Terminal. BNSF and its customers have more than sufficient access to the Federal Interstate System via the Arsenal Road Interstate I-55 interchange, which was constructed and paid for as part of the agreements for the development of Logistics Park Chicago. The Houbolt Road Bridge and planned interchange to Interstate I-80 would require a substantially longer travel distance to reach the Interstate from Logistics Park Chicago, and are neither a convenient nor economically viable alternative to the commercial vehicle routes already used for access to BNSF's terminal.

110.     CenterPoint is a competitor to BNSF and its customers, as it seeks to further its own interests for the development of its real estate surrounding Union Pacific's terminal. The authority to impose tolls and other regulations upon commercial traffic in and out of

BNSF's terminal provides CenterPoint with a competitive advantage, both in using BNSF's interests to fund its own investment in a competing terminal facility, and by providing an economic disincentive for the further development and utilization of BNSF's terminal in favor of Union Pacific's terminal.

111.     CenterPoint's authority to regulate the commercial traffic surrounding BNSF's terminal will have a chilling effect on the further development and future customer access to BNSF's terminal. The subject area under which IDOT, Will County, and Joliet have granted CenterPoint authority to regulate roadways was specifically drawn to capture the traffic in and out of both BNSF's facility and surrounding areas for future developments in and around Logistics Park Chicago.

112.     The authority granted by the government in this matter, by IDOT, Will County, and Joliet, to CenterPoint for the condemnation of BNSF's right of way and the regulation of commercial traffic in and out of BNSF's terminal vests governmental regulatory power in a self- interested private entity for the regulation of its competitors.

113.     Vesting the coercive powers of the government in CenterPoint violates the due process rights of BNSF as secured by the Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment.

114.     The Defendants' actions in seeking condemnation and granting rights to CenterPoint have created an actual and justiciable controversy with BNSF concerning whether their use of state law violates BNSF's constitutional rights, in violation of 28 U.S.C. § 1983. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

115.     The grant of governmental powers to CenterPoint by IDOT, Will County, and Joliet will result in irreparable harm to BNSF by materially and adversely depriving BNSF of its rights to due process.

116.     BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

Q.     For the entry of a Judgment declaring the grant of the governmental powers of condemnation and regulation of commercial traffic by IDOT, Will County, and Joliet to CenterPoint constitutes a violation of BNSF's right to due process under the Fifth Amendment to the United States Constitution, in violation 28 U.S.C. § 1983;

R.     For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from proceeding with any condemnation proceedings or imposing any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

D.     Awarding BNSF Railway Company its costs in bringing this action; and,

E.     For such other and further relief as is right and just.

### COUNT VI
**(Declaratory Judgment – Commerce Clause)**

1.-116. BNSF re-alleges paragraphs One through One-Hundred Sixteen aforesaid as and for Paragraphs One through One-Hundred Sixteen of Count VI as through fully set forth herein.

117.     Both the condemnation of BNSF's right of way and the regulation and taxation over the access routes into BNSF's rail terminal facility will impose significant economic and operational burdens on BNSF's interstate rail operations.

118.    In addition, the proposed regulations would result in an unnecessary and unreasonable burden upon national and international supply and distribution networks. These burdens will unnecessarily increase the costs of transporting goods through interstate and international channels on BNSF's rail network.

119.    The increased economic and operational burdens sought to be imposed by the Defendants on BNSF's interstate rail operations are undue and unnecessary, and moreover constitute an impermissible burden on interstate commerce in violation of the Commerce Clause of the United States Constitution, U.S. CONST., Art. I, § 8.

120.    As a direct result of these various burdens on interstate and international commerce and trade, the proposed condemnation undermines national and international faith and confidence in the State of Illinois' ability to participate in national and international shipping and transportation.

121.    Any financial or political benefits associated with CenterPoint's plans to construct the Houbolt Road Bridge through BNSF's right of way and authority to levy taxes upon the access routes into Logistics Park Chicago are outweighed by the harm that the actions would inflict on BNSF's operations and interstate commerce overall.

122.    The Defendants' actions in seeking condemnation and granting rights to CenterPoint have created an actual and justiciable controversy with BNSF concerning whether their use of state law violates BNSF's constitutional rights, in violation of 28 U.S.C. § 1983. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

123.    The grant of authority to CenterPoint by Joliet, Will County, and IDOT will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

124.    BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against the Defendants:

S.      For the entry of a Judgment declaring that the Defendants' use of its authority under the Illinois Toll Highway Act and the Illinois Eminent Domain Act and grant of state law authority to regulate access to BNSF's rail terminal facility for public or private economic purposes constitutes an impermissible deprivation of Plaintiff's rights under the United States Constitution, Art. I, § 8, in violation 28 U.S.C. § 1983;

T.      For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Defendants, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from proceeding with any condemnation proceedings or imposing any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

U.      Awarding BNSF Railway Company its costs in bringing this action; and,

V.      For such other and further relief as is right and just.

## COUNT VII
### (Estoppel – Will County, IDOT, CenterPoint)

1.-124.  BNSF re-alleges paragraphs One through One-Hundred Twenty-Four aforesaid as and for Paragraphs One through One-Hundred Twenty-Four of Count VII as through fully set forth herein.

125.    Will County, IDOT, and CenterPoint induced BNSF to develop and build Logistics Park Chicago by promising certain roadway improvements in and to the surrounding

area, including the improvement of both Arsenal and Baseline Roads, and the construction of a new h i g h w a y interchange at I-55 which would be used to provide the primary means of access to the rail terminal facility.

126. Moreover, Will County and IDOT expressly agreed to fund the roadway improvements in part based on the commitments by BNSF to invest in the construction of the rail terminal facility.

127. In a series of agreements, including those dated March 7, 2000, August 3, 2000, November 16, 2000, and November 7, 2001, made collectively by and/or between BNSF, CenterPoint, Will County and IDOT, it was promised that CenterPoint, Will County, and IDOT would collectively acquire title, easement and expansion/improvement of Arsenal Road and Baseline Road to permit free flow of traffic from Interstate 55 to the facility's gate in exchange for BNSF's financial commitment in the development and construction of the rail facility known as Logistics Park Chicago. (See i.e. the Lease Agreement of March 7, 2000, Article 3, Section 3.1(a)(iii) and 3.1(b)(i) & (ii), attached hereto as Exhibit H; IDOT Commitment Letter of August 3, 2000, as Exhibit B to the Economic Development Agreement between IDOT and Will County of November 16, 2000, approved by Will County Board Resolution 00-465, all attached hereto as Exhibit I; and Agreement of November 7, 2001 between Will County and CenterPoint, approved by Will County Board Resolution 01-479, all attached hereto as Exhibit J).

128. BNSF, through the satisfaction of the financial commitments made for the development and construction of Logistics Park Chicago, paid substantial consideration for CenterPoint, Will County and IDOT's agreement to provide free, public access to the rail terminal facility, free from additional charges or tolls.

129. Notwithstanding Will County and IDOT's agreement to improve Arsenal Road

for consideration heretofore paid by BNSF, Will County and IDOT have now granted CenterPoint the authority to assume control over the access routes into Logistics Park Chicago, further granting the authority to impose traffic restrictions and levy tolls.

130.    BNSF relied upon the promises and agreements made by CenterPoint, Will County and IDOT in inducing it to invest in the development and construction of Logistics Park Chicago.

131.    Will County and IDOT should be estopped from granting CenterPoint or its agents the authority to assume control over the routes leading in and out of Logistics Park Chicago, or from granting CenterPoint authority to impose traffic restrictions and levy tolls.

132.    The Defendants' actions in seeking condemnation and granting rights to CenterPoint have created an actual and justiciable controversy with BNSF concerning whether Will County and IDOT have breached the promises, representations, and agreements made to BNSF for the development of Logistics Park Chicago and the improvements to the surrounding roadways, and should be estopped from granting the rights promised to CenterPoint in the MOU. Declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate to resolve this controversy.

133.    The grant of authority to CenterPoint by Will County and IDOT will result in irreparable harm to BNSF by materially and adversely interfering with BNSF's ability to conduct interstate rail transportation operations.

134.    BNSF has no adequate remedy at law and, unless the relief requested here is granted, BNSF, its employees, contractors, and customers will suffer irreparable injury, loss, and damage as described herein.

**WHEREFORE**, BNSF Railway Company respectfully requests the following relief against Defendants CenterPoint, Will County, Illinois and the Secretary of Transportation of the Illinois Department of Transportation:

W.     For the entry of a Judgment declaring that Will County and the Illinois Department of Transportation are estopped from granting authority to CenterPoint or any entity to regulate access to BNSF's rail terminal facility;

X.     For the entry of a temporary restraining order, and thereafter, a preliminary and permanent injunction, enjoining Will County and IDOT, their agents, employees, servants, assigns, and all those acting in concert with them or on their behalf from permitting any regulations or tolls on vehicular traffic accessing Logistics Park Chicago as provided herein;

Y.     Awarding BNSF Railway Company its costs in bringing this action; and,

Z.     For such other and further relief as is right and just.

Respectfully submitted,

/s/ Kevin W. Baldwin
Kevin W. Baldwin
Attorney for BNSF Railway Company

/s/ Robert J. Prendergast
Robert J. Prendergast
Attorney for BNSF Railway Company

Kevin W. Baldwin 6277070
kbaldwin@daleymohan.com
Robert J. Prendergast 6181275
rprendergast@daleymohan.com
Daley Mohan Groble, P.C.
Attorneys for BNSF Railway Company
55 West Monroe Street, Suite 1600
Chicago, Illinois 60603-5001
312-422-9999
312-422-5370 Fax

## CERTIFICATE OF SERVICE

I, Robert J. Prendergast, an attorney, hereby certify that I caused the foregoing FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF to be served on the attorneys of record and/or parties listed below via electronic filing using CM/ECF, as indicated below:

Michael John Scotti, III
Adam N. Hirsch
Garry L. Wills
Roetzel & Andress LPA
30 North LaSalle Street, Suite 2800
Chicago, IL 60602
mscotti@ralaw.com
ahirsch@ralaw.com
gwills@ralaw.com
*Counsel for City of Joliet, DPR Extension, LLC,*
*and CenterPoint Properties Trust*

Edward R. Gower
Esther J. Seitz
Hinshaw & Culbertson LLP
400 South 9th Street, Suite 200
Springfield, IL 62701-1650
egower@hinshawlaw.com
eseitz@hinshawlaw.com
*Counsel for County of Will*

Michael T. Dierkes
Illinois Attorney General's Office
100 West Randolph Street, 13th Floor
Chicago, IL 60601
mdierkes@atg.state.il.us
*Counsel for Randall Blankenhorn*

on August 16, 2018.

By: /s/ Robert J. Prendergast
     Robert J. Prendergast
     Daley Mohan Groble, P.C.
     55 West Monroe Street, Suite 1600
     Chicago, Illinois 60603-5001